# APPENDIX TO VOL. XXV.*

R. M. McLeod et al., Trustees &c., vs. The Savannah, Albany and Gulf Railroad Co.

McDonald, J. dissenting.

According to the complainant's bill, which is true for the purposes of this investigation, the plaintiffs, by a direct chain of title, from Joseph Hill down to themselves, stand in his stead as to all the rights which were granted to him by an Act of the General Assembly of Georgia, of June 26, in the year 1806, securing to him, his heirs and assigns, the exclusive right to build a bridge over the Ogechee river. If the grant, then, to Hill, vested in him such exclusive right, and in addition thereto, guaranteed to him, that on the performance by him, his heirs or assigns, of the conditions specified in the grant, no person or persons should, at any time, build any bridge or keep any ferry on the Ogechee river, within five miles, either above or below the said bridge, the Legislature, according to the construction placed on such grant, could not, by a subsequent Act, either directly or indirectly, invalidate or impair the terms on which that grant was accepted, without providing that compensation should be made them.

If Hill acquired such a title, a subsequent grant of the identical right, or of one which impaired its value, by admitting the construction of a bridge or the keeping a ferry within the prohibited limits, could not avail the grantee. It would

* This dissenting opinion of Judge McDonald, being misplaced at the time the case was put to press, is inserted here. See the case reported, *ante*, p. 445.

be void. I will examine the Act conferring on Joseph Hill the exclusive right to build the bridge or keep a ferry. The Legislature and Joseph Hill must be regarded as contracting parties, and the Act of the Legislature referred to, as the contract. The second section of the Act grants to Hill the exclusive privilege of erecting a bridge over the river, Great Ogechee, at or near the place where the ferry was then kept in the county of Chatham, but to this exclusive privilege is added no prohibitive stipulation preventing any person else from erecting a bridge or keeping a ferry within any specified distance of the point to which the exclusive privilege is affixed. But Hill was required to build the bridge in a complete and substantial manner, and capable of sustaining and passing all carriages' in common use. The bridge was to be built within three years from the date of the Act; it was to be rebuilt when necessary, and Hill, his heirs and assigns were to keep the bridge in good and sufficient repair forever. Hill, his heirs and assigns, were to hold the same, and all emoluments arising therefrom. The exclusive privilege granted by the Act was to build a bridge at or near the place where the ferry was then kept in the county of Chatham. This was by the second section of the Act. Had the Act stopped here, there would have been an express grant of an exclusive privilege, from which would have been implied a restriction upon the Legislative power to make a subsequent grant of a privilege to another person to erect a like bridge at the same place. There would have been an express grant, and an implied prohibition of subsequent legislation. But as an Act of legislation merely, there could have been no express or implied restriction on the power of a subsequent Legislature. The Act must have amounted to a contract to have brought into operation and application, the clause of the Federal Constitution which prohibits the several States from passing laws impairing the obligation of contracts. The Act has all the elements of a contract about it. The second section may be construed as a covenant, that if Hill

his heirs or assigns, would build a bridge over the river, and at the place mentioned, within the time specified, and of the description therein set forth, rebuild it when necessary, and keep it in repair forever, they should have all the emoluments arising therefrom, and the exclusive privilege of erecting such bridge at that place. This is a complete contract. The exclusive privilege, and the duration of the right are expressed on the one hand, and the consideration on the other. But in this contract, there is nothing in the letter, which would restrict the Legislature from granting a like privilege to another person to construct another bridge, not at or near the place specially designated, but so near it as to interfere seriously with the privilege previously granted, and to operate ruinously perhaps to the party induced by the prior grant to engage in the expensive enterprize. Whether this second grant would be a violation of the first, I will not discuss, as it is not, in my view, necessary to a decision of the point before the Court.

But for some reason, perhaps, from an apprehension on the part of the grantor, that Hill his heirs or assigns might be unwilling to engage in so costly an enterprise, without a provision effectually securing to them freedom from competition, within a limited distance, the Legislature in the fifth section enacted that it should not be lawful for any person or persons, at any time or times, to build any bridge or keep any ferry on the Ogechee river, within five miles either above or below the said bridge. This was a supper-added covenant. It did not extend the right to Hill to select any point within the distance of ten miles on the river, within which he might build his bridge. His exclusive privilege as to place of building, and duration of right remained unaltered, and no additional exclusive privilege was given to him. This section of the Act makes it unlawful for *any* person, at *any time*, to build *any* bridge or keep *any ferry* within five miles, &c., &c. If the object of this section of the Act was to induce

Hill, his heirs or assigns, to undertake an enterprise, which they would not have undertaken without it, as guaranteeing to them all the emoluments that could reasonably be expected from travel of all sorts at that crossing, it is certainly a violation of the contract and an infringement of their rights, for any person, natural or artificial to build *any* bridge of any sort within the prohibited limits, by which their emoluments are diminished. The Legislature has made no grant which necessarily interferes with its prior grant, or from which can be inferred an intention on the part of the Legislature to interfere with its contract with Hill, his heirs or assigns. By an original Act and several amending Acts, it incorporated the Savannah, Albany and Gulf Railroad Company. By the original Act the Company was authorized to construct a Railroad between Savannah, or some point on the Central Railroad near Savannah, and Albany. None of the Acts designates a route. The location of their road is left entirely with the Company. If any right of the plaintiffs, therefore, has been infringed by the location, it has been by the voluntary act of the Company, under a very general power in their charter, and not by any special authority in the Act, and it seems to me to be unjust to say that the Legislature intended to grant a power to do an act in direct conflict with their prior grant. These grants are similar in their origin. The grant of the exclusive privilege of building the bridge, with a guaranty that no other bridge should be built within five miles above or below, had its foundation in public convenience. Nothing else could have justified the prohibition of the owners of the soil on each side of the river, for five miles above and below, from building bridges or erecting ferries on their own land. The grant of the charter to the defendants had its origin, in a more extensive public convenience. In each case there is an appropriation of the property of one person to another, or what is equivalent to it, and this appropriation, in each case, depends for its support on the same principle, viz: the power of a whole community to seize private property

and apply it to its own use, whenever its convenience requires it, upon making compensation for it. Without pausing to question the propriety of extending this principle, in favor of persons natural or artificial, who project works for individual profit by which the public generally may benefited, I will remark that such extension of it is now so well established by repeated adjudications, that when a person acquires a right by this process, it is to be regarded as much an interest and property as if he held it by grant from the owner.

Hill, his heirs and assigns, in virtue of the section of the Act prohibiting any person at any time, from building any bridge within five miles above or below the one he had the exclusive privilege of erecting, had such a property in the river and its banks for that distance, as would render an entry thereon by any person for the purpose of constructing a bridge of any sort, an invasion of his rights of property. But it is said that Hill had the exclusive privilege of constructing a bridge capable of sustaining and passing carriages in common use; that railroads were not then thought of in this country; and he was not required to put up a structure capable of sustaining locomotives or cars, and that it must not be presumed that the Legislature intended to deprive itself of the power of engaging in or authorizing, such works for the greater public convenience as subsequent improvements in the mode of transportation or of traveling should establish as necessary to it; and that the grant to Hill being an exclusive grant must be construed strictly. I do not dispute a single position contended for. The grant to Hill, his heirs or assigns, is a grant to build a bridge capable of sustaining and passing carriages then in common use; and as his is a grant of an exclusive privilege, it cannot be construed that he has an exclusive right to build a railroad bridge, and to collect tolls from every train that passed. He has no such authority, and he and his heirs, or assigns, could not be supported in any such pretence. He cannot be required to put up such a bridge, because it is not his contract to do it.

He was bound to erect and keep in repair the kind of bridge specified in the Act; but if he would do that, and he, his heirs and assigns, would keep it in repair forever, it should not be lawful for any person, at any time, to build *any* bridge, (not a bridge capable of sustaining and passing carriages in common use) but *any* bridge, within the distance specified in the Act. The object was to impress Hill, his heirs and assigns, with the strongest assurance, that the Legislature, the other contracting party, could express, that, if he or they would construct a bridge of the sort described in the second section of the Act, and keep it in repair forever, no bridge should ever be built within the prohibited limits, which could interfere with the emoluments to be derived from that costly work. The Act confers a perpetual right, and Hill his heirs and assigns, assume a perpetual obligation. There is nothing in the case of *Charles River Bridge vs. Warren Bridge, in* 11*th Peters*, which countenances the doctrine contended for in this case. There was no exclusive privilege there. There was nothing in the first charter prohibiting the construction of any bridge within a limited distance. On the contrary, the principle is there admitted, or is clearly to be extracted from the case, that where there is a grant of exclusive privilege by express words or necessary implication, it is inviolable. In granting a charter to the Central Railroad and Canal Company, the Legislature declared that it should "not be lawful for any other railroad or canal to be built, cut or constructed in any way or manner, or by any authority whatsoever, running laterally within twenty miles of the route adopted, unless by the said company, or with the consent of the Board of Directors of said company." The exclusive right granted to this company is not unlike that granted to Hill, his heirs and assigns. The latter clause of the sentence quoted is altogether supererogatory, as the company itself might unquestionably have accepted a grant to itself, or might have waived the protection given to it in

the Act by consenting to a grant to other persons to construct a lateral road within twenty miles of its route.

But suppose the Legislature were to deem it proper to grant to another company the privilege of running another railroad within the prohibited distance, on the ground, that the public convenience absolutely demanded it. There is no constitutional obstacle. Every contract of the sort is made subject to that inherent power in the State as sovereign, to take private property for public use, by making compensation. A franchise is property, and may be seized for public purposes; for all private interests, according to principles now so repeatedly adjudicated as to be well established, must yield to what the Legislature considers a public necessity. But should the Legislature deem that a great supervening public necessity demanded an invasion of the chartered rights of the Central Railroad and Banking Company, can it be pretended that any Act for that purpose would be valid or binding which did not respect the rights of private property, and make it a condition that just compensation should be made for it? The Courts at least, would interpose, or ought to do so, in my judgment, until the party whose rights of property had been violated, was compensated.

I think, that by the Act of 1806, Hill, his heirs and assigns, had the exclusive privilege of building a bridge of the description specified in the Act, and at the place therein designated, and that no bridge of any sort interfering with the tolls of his bridge could be erected by any person within five miles of it, above or below.

It is further my opinion, that there is no express grant by the Legislature, of authority to the defendants to build their bridge within that prohibited distance, and that to construct it there, was their voluntary act, for which they are responsible; that the bridge and franchise of plaintiffs are property, and the interference with them is a trespass on individual right, which ought not to be permitted but on condition that compensation is made to the owner.

HARVARD LAW SCHOOL LIBRARY

I further believe, that the erection of a railroad bridge within the prohibited distance, is a violation of the rights of Hill, his heirs and assigns, under the Act which authorized them to construct and keep in repair the bridge and forbad the erection of any bridge within the specified limits, and that the quantum of damages sustained thereby, should be ascertained in the manner pointed out by law, in regard to other property, and should be paid by the defendants. The franchise granted to Hill is private property, and if taken for public use, compensation should be made. *West River Bridge vs. Dix*, 6 *Howard's Sup. Ct. Rep.* 507. I am therefore of opinion that the judgment of the Court below ought to be reversed.